Thomas BEIRNE and James Beirne, Plaintiffs,

v.

GETTY PETROLEUM CORP., Defendant.

No. CV 88–0668.

United States District Court, E.D. New York.

June 17, 1988.

Reisch, Simoni, Bythewood & Gleason, Garden City, N.Y. (David A. Bythewood, of counsel), for plaintiffs.

Robert G. Del Gadio, Garden City, N.Y., for defendant.

**633**

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Thomas Beirne and James Beirne ("Beirne") operate a gasoline service station at 606 Wantagh Avenue, Levittown, Nassau County, New York, under the tradename "Getty" pursuant to a lease and supply agreement dated May 23, 1984, which expired November 30, 1987.[1] Beirne moved (order to show cause dated May 9, 1988) for a preliminary injunction pursuant to Fed.R.Civ.P. 65 to enjoin the threatened termination by defendant Getty Petroleum Corp. ("Getty") of the franchise and landlord-tenant relationship, effective June 30, 1988. The complaint alleges a violation of the Petroleum Marketing Practices Act ("PMPA") in Getty's failure "to negotiate 'in good faith' any renewals of franchises, leases and/or supply agreements" (¶ 11) and the failure of Getty to give adequate notice in fixing the termination date as March 3, 1988 (letter of February 19, 1988). Getty's counsel appeared on March 4, 1988 and rescinded the letter of February 19, 1988. (March 4, 1988 Tr. at 2). The complaint was thereafter deemed amended to allege a violation based on the notice from Getty to Beirne dated March 4, 1988 terminating the franchise and leasehold as of June 30, 1988. Getty's answer was deemed amended to deny the allegations (May 12, 1988 Tr. at 5) and assert the affirmative defense that the refusal to renew was made in good faith (May 24, 1988 Tr. at 90). With the consent of the parties, the issues were set down for trial on the merits in lieu of a hearing on the motion (May 12, 1988 Tr. at 5).

The court finds:

Beirne operated the gasoline service station at 606 Wantagh Avenue for more than ten years prior to November 30, 1987.

The station occupies 24,000 square feet of land. In September or October 1987 Louis Maschi, Long Island Regional Marketing Manager for Getty, and Edwin C.

---

[1] The lease-supply agreement and Equipment Loan Agreement were executed by Getty Refining and Marketing Company, a subsidiary of Getty Oil Corporation, predecessor in title to plaintiff Getty Petroleum Corp. Getty Petroleum Corp. succeeded to the rights of Getty Oil Corporation in the leasehold and to fee ownership in the land on February 1, 1985.

Levy, Field Sales Manager for the Long Island District for Getty, observed that the station was dirty, weeds were left growing at the curb of the street, it needed paint, the attendant was not in uniform, and patrons were not promptly served.

Prior to this time, in or about August or September, Beirne inquired of John Bauer, Marketing Representative of Getty and Levy, about the extension of the lease. Levy discussed with Maschi terms and conditions for a lease for the station to commence on the expiration of the then current lease.

In accordance with the practice and policy of Getty throughout the eleven states in which it operates (extending to the northeastern United States and including New York State), Maschi asked Getty's real estate department to fix the fair market value of the property. George DeForest, an expert in the field of values of gasoline service stations, fixed the fair market value at $440,000. The formula established by Getty for renewal leases is a base rent computed at 12% per annum of the fair market value. Maschi established a base rent of $48,000 per year. However, he decided to graduate the monthly rental by finding a monthly rent of $3,000 for the first year, $3,500 for the second year, and $4,000 for the third year. In addition, the tenant was required to pay the annual real estate taxes in monthly installments, $1,200 a year for maintenance in monthly installments, 1% per month of the cost of capital improvements to the station, i.e., installation of tanks and a vapor recovery system (required by state law), $72 per month to insure Getty against claims of third parties for property damage and personal injury (or supply a policy insuring Getty against such risks.) It was Getty's policy to require three months rental as security at the highest rate for performance by the tenant of the terms of the lease ($12,000) and security for merchandise delivered to the station in an amount represented by the cost of a delivery ($10,000).[2] It was also Getty's policy to establish a minimum gal-

lonage, and assess the operator three cents (3¢) a gallon to the extent the operator failed to purchase the established minimum in any month.

At Beirne's request a meeting with both plaintiffs was held by Levy and Bauer on November 4, 1987 at the Getty field office in Setauket, Long Island to discuss the terms and conditions of a new lease to start December 1, 1987. The terms outlined above were offered, with a minimum monthly 60,000 gallon requirement. The meeting lasted about two hours. The complaints concerning Beirne's operation of the station were referred to by Levy briefly. Beirne made no objection to the proposed rent for the three year period. Beirne objected to the amount of the minimum gallonage requirement and the lump sum payment of rental security. Levy agreed to reduce the minimum gallonage requirement to 50,000 gallons monthly and accept payment of the $12,000 rental security at the rate of $1,000 per month over a twelve month period.

All the material terms of the renewal lease and supply agreement having been agreed upon, Levy reported the same to Maschi. Maschi directed his secretary to prepare the customary lease package for a renewal lease, i.e., lease, supply agreement, contract, equipment loan agreement, sign and pole agreement, and addendum to lease. The supply contract, which by its terms was a three year contract for the same period of the lease under the caption "Trial Franchise," recited that the relationship between the Company and Lessee was for a period of one (1) year. "Company may fail to renew this franchise at the end of this one (1) year term by notifying lessee in accordance with the provisions of 15 U.S.C. § 2804 (the Petroleum Marketing Practices Act) of the Company's intention not to renew the relationship."

The lease package, together with a summary statement of the PMPA, was sent to Beirne by certified mail and received by

---

**2.** The tenant had the option of paying for merchandise by certified check at the time of delivery.

Beirne on December 3, 1987. During the week of December 7, 1987, Bauer visited James Beirne at the station.[3] Bauer asked whether there were any problems concerning the lease package; Beirne said he did not know. About two weeks later, in response to the same inquiry, James Beirne told Bauer that his attorney was examining the lease. On March 3, 1988, Levy and Bauer visited the station. Thomas Beirne told them that they would not sign the lease-franchise documents.

## DISCUSSION

Beirne charges Getty with bad faith in (1) rescinding the letter of February 19, 1988 terminating the franchise on March 3, 1988 and then giving notice of termination on June 30, 1988 by letter dated March 4, 1988 and (2) offering Beirne a trial franchise for one (1) year.[4]

■ Getty has the burden of establishing that the nonrenewal was permissible. *See Lippo v. Mobil Oil Corp.*, 802 F.2d 975, 977 (7th Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1374, 94 L.Ed.2d 689 (1987); *see also Palmieri v. Mobil Oil Corp.*, 682 F.2d 295, 296 n. 1 (2d Cir.1982).

### Good Faith in Refusal to Renew

Getty's decision to terminate the franchise on June 30, 1988 rests on its good faith effort to negotiate the proposed lease. Beirne's only complaint concerning the terms and conditions of the lease relates to the security provisions, i.e., $12,000 rental security and $10,000 contract (or merchandise) security and the "Trial Franchise" provision.[5]

■ PMPA prohibits the franchisor from applying conditions of the franchise (including the lease) in a "discriminatory manner in order to drive a franchisee out of the franchise relationship." *Palmieri*, 682 F.2d at 296. This limitation did not preclude the franchisor from changing the terms and conditions of the franchise. In enacting the PMPA, Congress intended "that franchisors be accorded sufficient flexibility to respond to market conditions ... [and] certainly did not contemplate the perpetuation of an economically burdensome franchise relationship." *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1223 (7th Cir.1982); *see also Valentine v. Mobil Oil Corp.*, 614 F.Supp. 33, 38 (D.Ariz.1984), *aff'd*, 789 F.2d 1388 (9th Cir.1986) (citing Senate Report P.L. 95–297, U.S.Code Cong. and Ad.News 873 at 876–77 (1978)) particularly important is that legislation dealing with this subject recognize the importance of providing adequate flexibility so that franchisors may initiate changes in their marketing activities to respond to changing market conditions and consumer preferences."). The harsh result of a proposal by the franchisor is not a consideration in determining the good faith of the franchisor. *See Brach*, 677 F.2d at 1223;

■ Getty negotiated in good faith. The terms and conditions of the lease and franchise were the terms and conditions Getty offered all its franchisees. The rental and contract security required of Beirne as lessees and franchisees were provisions applicable to all Getty lessees and franchisees. Moreover, Thomas Beirne and James Beirne agreed to all the terms and conditions at the meeting with Levy and Bauer on November 4, 1987.

Having negotiated in good faith, and Beirne thereafter having rejected the lease/franchise, Getty had the right to refuse to continue the relationship. *See Kessler v. Amoco Oil Co.*, 670 F.Supp. 853, 859 (E.D.Mo.1987).

---

**3.** The Getty station was operated by James Beirne. Thomas Beirne operated a gasoline service station at another location.

**4.** Beirne argues waiver in using "state events" as a ground for termination, citing *California Petroleum Distributors, Inc. v. Chevron U.S.A.*, 589 F.Supp. 282 (E.D.N.Y.1984). Our discussion on the issue of good faith disposes of the claim of waiver. The further ground based on § 199–j of

the New York General Business Law declaring null and void "Any provision of a franchise which requires a dealer to purchase or sell products of the distributor other than motor fuel ..." does not in our view make the offer of the franchise illegal or demonstrate bad faith.

**5.** The rental provisions are conceded to be fair. Tr. at 161.

*The Trial Franchise Provision*

■ Beirne seeks to establish Getty's bad faith in offering a Lessee Supply Contract permitting Getty to terminate the relationship "at the end of one year." The error is obvious. The Lessee Supply Contract states a term of "three (3) years beginning December 1, 1987 and ending November 30, 1990." The refusal of Beirne to sign the lease and other documents was not because of the trial franchise provision. Beirne did not realize it was contained in the document until it was called to their attention at trial.

*Notice of Termination*

■ Beirne states that Getty: (1) failed to serve notice of a summary of the PMPA (Brief at 11), and (2) since the notice of February 19, 1988 was invalid, its letter "of March 11, 1988 had no legal effect because defendant had already waived its right to terminate plaintiff's franchise...."

We find that the letter of March 4, 1988 included a summary of the PMPA. We further find that Getty did not waive its right to terminate the leasehold and franchise. A notice to terminate may fix a date beyond the original expiration date of the lease/franchise. *See Ferriola v. Gulf Oil Corp.,* 496 F.Supp. 158, 161 (E.D.Pa.1980), *aff'd without op.,* 649 F.2d 859 (3rd Cir. 1981).

### CONCLUSION

The leasehold and franchise of the Getty gasoline service station at 606 Wantagh Avenue, Levittown, Nassau County, New York shall terminate on June 30, 1988 in accordance with the notice of March 4, 1988.

SO ORDERED.

The Clerk of the Court is directed to enter judgment in favor of the defendant Getty Petroleum Corp. and against plaintiffs Thomas Beirne and James Beirne dismissing the complaint.